The fourth case this morning is 17-3434, Alexis Leopoldo Martinez v. Attorney General of the United States. Mr. Krupp. Good morning. May it please the court, George Krupp on behalf of the petitioner, Alexis Martinez. And with the court's permission, I'd like to reserve two minutes of time for rebuttal. Granted. So, as your honors are aware, this case presents two issues. The first is whether Mr. Martinez's New Jersey State conviction was a controlled substance offense under the INA. The second is whether it was an aggravated felony under the INA. And I'm going to start with the second question because it was that holding by the BIA that Mr. Martinez was an aggravated felon that barred him from any further discretionary relief. If it was merely a controlled substance offense that he had been convicted of, he would have been able to make a showing based on his length of time in the country, on his connections to the country, that he was entitled to some discretionary relief for removal. So no matter what the decision is today on the controlled substance point, if there's a reversal on aggravated felony, he's entitled to further relief from the BIA. So let's talk about that aggravated felony issue. It boils down to a single point in the briefs, your honors, and that is what is the scope of attempt liability under New Jersey law, and how is that compared to the scope of attempt liability under federal law? Hasn't the New Jersey Supreme Court recently entered that court? So I think your honors is probably referring to some of the case laws cited in the government's brief in which the New Jersey Supreme Court has suggested that attempts must be more than mere preparation, some of that case law. Let me make two points on that. The first is that all of the New Jersey Supreme Court cases that we've seen, they don't undermine the holding in Fornino, which is the case that's held us that very – yes, your honor. So on Fornino itself, Fornino is a plain error case. You can get to that in a bit. But we're aware New Jersey has modeled penal code, substantial steps strongly corroborates, and the federal has substantial steps strongly corroborates. Your argument requires you to prove that they have diverged so much that we should understand New Jersey as broader categorically than the federal. But how much can we read from Fornino, a plain error case, which comes before Farrad, and by the time we get to Farrad, the court's saying, look, we're going to quote Oliver Wendell Holmes, mere preparation, it's a question of degree, there's some line drawing. Why isn't this all just in the process of trying to draw the lines between mere preparation and substantial step? So it is, your honor. And let me make two points on that. The first is that the New Jersey jury instructions very, very clearly say that it is only very remote preparatory acts, and that comes straight out of Fornino, and those jury instructions are still used in New Jersey courts to this day. Compare those to the Third Circuit jury instructions, which require mere preparation or more, more than mere preparation. That's on the remote preparatory acts versus mere preparation point. We have another argument here, your honors, and that has to do with solicitation. And I think here it's even clearer that on that spectrum you were just describing, solicitation falls further along the spectrum towards inactivity, I'll call it that, than the federal test. Under federal law, that's been held by multiple circuit courts of appeals, conduct of solicitation does not give rise to attempt liability. Well, there's a difference between saying categorically it doesn't versus it can't. If a solicitation is a substantial step that strongly corroborates, I don't see a ground for disputing why certain solicitations couldn't amount to attempts. Are you contesting that or not? We're not contesting that. I think that what we're contesting is that under New Jersey law we have the answer to the question about what kind of conduct qualifies, and it's naked solicitation. My concern, though, is that New Jersey does not have a separate crime of attempt. New Jersey folds it into attempt. It folds solicitation into attempt, so the only solicitations that can be prosecuted and convicted in New Jersey is the subset of them that already require a substantial step that is strongly corroborative of the actor's criminal purpose. And if that's the case, there's no reason for us to go rummaging around in the way that other jurisdictions treat their solicitation crimes, which may be broader than New Jersey solicitation as subset of attempt crime. Do you follow me? I believe I do, Your Honor, and you'll tell me if I don't. So I think you made a statement in your question, which I think we would actually disagree with, which is that solicitation requires a substantial step, and our argument is that solicitation is the substantial step under New Jersey attempt liability. You don't think that New Jersey restricts to certain solicitations. Do you think New Jersey solicitation law is as broad as solicitation law elsewhere? Sunsar tells us that let's look at the act that was punished in Sunsar. It was literally asking two persons who were not involved in the crime at all to move a couple of barrels of toxic waste across the street. That was the crime. That was the act that gave rise to the attempt liability, and it was found to be a substantial step. It's a superior court decision. Do you have anything from the New Jersey Supreme Court? We don't. We don't. That is a reported decision. Isn't your last statement the crux of the matter? That's determined to be a substantial step. As long as you have intent and a substantial step, then you've met the definition of attempt in New Jersey law under Sunsar, and that is the same definition that's been adopted in Cruz Jimenez in the federal context. So I think that's where the divergence happens, Your Honor. Under the federal law, a solicitation is not a substantial step, and we've cited you a number of cases in that regard. It can be. The nature of the solicitation needs to be evaluated to determine whether it meets those criteria, whether it reflects the intent, and whether it constitutes a substantial step. So we don't, with respect, Your Honor, we don't read the case law that way. I mean, the case law that we've cited to you indicates that, for example, I'm thinking of the Fifth Circuit case Ibarra-Luna. There is where he found that solicitation is not punishable under the CSA. Acts of solicitation are not punishable under the CSA. Levy-Lisena, it's a Ninth Circuit case that essentially says there's nothing in the CSA that would give rise to liability for solicitation, and we know that the CSA includes liability for attempt, for example. So I don't think we're breeding too much into this case law to see a divergence between federal law and New Jersey law on this point. New Jersey law itself, Sunsar itself, tells us that New Jersey is in the minority of jurisdictions that make naked solicitation, near solicitation, a substantial step for attempt liability. Model Penal Code lists out as examples of kinds of attempts, solicitation, right? It does. So solicitation standing alone under the Model Penal Code, which is incorporated into the federal generic definition, can rise to the level of attempt. So to respond to that, Your Honor, I think you're assuming that the Model Penal Code's full definition of attempt has actually been incorporated into federal common law, and I don't necessarily think that that's the case. I mean, for one thing, if that was the case, we wouldn't have courts telling us that acts of solicitation can't rise to the level of attempt. Well, wait, who says they can't rise to the level of attempt, right? Sandoval might suggest that. Sandoval might be right. It might be wrong, okay? But I don't see Baraluna saying that. Baraluna said the solicitation in that case was not enough to, you know, have strong corroboration, right? So I'm not sure it's right or wrong, but Judge Krauss has a powerful point that if the Model Penal Code's commentary suggests, here's an example of attempt, here's a certain kind of solicitation can qualify. And I thought when we started our conversation that you agreed that certain solicitations could qualify, and many of the cases you're talking about are ones in which particular solicitations didn't. But I'm not sure those are actionable under New Jersey law as attempt, because attempt, they don't have a separate solicitation crime. Their solicitation is a subset of attempt law. So what we have under, here are the rules as we see them, right? Under federal law, attempt liability attaches upon something more than mere preparation. That rule is hard, it's in every circuit. The other rule that I think we can derive from the cases is that mere solicitation, or naked solicitation, does not give rise to attempt liability. And the crux of our argument is that under New Jersey law, what is punishable under the attempt statute is mere solicitation. And that can be true even if both jurisdictions or both regimes derive their attempt definition from the Model Penal Code. It doesn't, just because two jurisdictions base their law on the Model Penal Code, does not mean that as a result of, let's say, legal interpretation over the years, that they can't diverge. And here we see, albeit a law division case from New Jersey, that has been recognized by this court as describing the scope of New Jersey attempt liability in Shabazz, that solicitation conduct can give rise to attempt under New Jersey law. But it sounds like that argument rests on semantics, whether the adjective mere or naked is placed in front of the solicitation. In both cases, whatever it is and whatever adjective you put on it, for New Jersey, for the attempt, for the solicitation to qualify, you need to have the intent and you need it to be a substantial step. In the federal context, whatever adjective you put on it, those are the two requirements substantively. Where we have complete overlap on those requirements, why does it matter if it's called naked or mere in the context of New Jersey case law? I think to answer your question, Your Honor, the facts of some of the federal cases indicate that solicitation, mere solicitation, is not enough. Again, I point you to Ibarra Luna, where there was an offer there without any capability of making a sale. It was literally just words, right? I'm going to do this. And in that case, the government conceded that that was basically mere solicitation or naked solicitation. It was just words that can't give rise to a substantial step. Here's the statute, 2C5-1B. So this is the only way that solicitation is actionable in New Jersey, and it already has to be a substantial step that is strongly corroborative of the actor's criminal purpose. So it might be that Ibarra Luna might not be actionable in New Jersey. I don't know that we need to resolve that. All we need to resolve is that New Jersey isn't, and I've looked and I can't find examples of this kind of naked solicitation you're looking, being prosecuted in New Jersey either, which might be because this is setting perhaps a higher threshold than we have for the federal solicitation. I'm sorry, I don't follow your question. The point is you have to show that naked or mere solicitation that is not a substantial step or is not strongly corroborative is in fact covered by the New Jersey statute to make it broader than the federal statute. I cannot find that in the statute. I cannot find those cases being prosecuted. So why should we believe that New Jersey is in fact, despite the words of its statute that require a substantial step that's strongly corroborative, why should we believe it is prosecuting these, you know, mere offers to buy or something that would not be substantial steps that strongly corroborate? So just turning back to the statute again, Your Honor, and as interpreted by first Jovanovich and then Sunzar, the conduct is the substantial step. And the solicitation conduct is the substantial step. So that is it. If you have other acts, or in Sunzar, for example, I think you had some prior acts that indicated intent, but it was the act of asking a loan that gave rise to that attempt liability. We don't think that's the case under federal law. Now, I'm about to run out of time, Your Honors. I don't know if you'd like me to stay with this issue or address briefly the controlled substance point. Okay. So let me as briefly as possible address the controlled substances issue. And here what we have is really the parties talking past each other in a very real way in a briefing. We think it's pretty clear that the board's ruling can't be upheld on the basis that the board gave, which is that there is a categorical match between federal law and New Jersey law. And that's setting aside a realistic probability consideration for the time being. What we have now in opposition to our petition, the government has suggested two grounds for affirmation that the board didn't raise. One has to do with the excuse. Why isn't that the only reasonable reading of the opinion? That is that they necessarily rejected the argument that you made, that you should look at the time of the removal proceeding, and they embraced the notion that you look to the time of the conviction. They cite Malooly, comparing state and federal schedules at the time of petitioner's conviction. They've rejected your argument that it's no longer a controlled substance under federal law, and that being significant. And the analysis talks about the offense which he stands convicted. So we don't read, I mean, in fairness, Your Honor, we don't think that's a particularly fair reading of the opinion. Here the government had every opportunity to tell us, or in this case the board had every opportunity to tell us, that it was relying on a former federal schedule. It didn't do that. It did acknowledge our argument, and then it went on to say, without any further commentary, that in this case the two statutes match. It's telling us that New Jersey 2C35-5 is the same as 812C and Schedule 2A4. It doesn't cite to an old version of that statute. In fact, I think if we looked at the current version of that statute, the time that the board made this decision, we'd see that they do match, but the schedules are different. And I don't think there's any dispute that you have to look at the schedules and not the statute. So there's nothing here indicating that there was a historic scheduling issue, that there's any distinction between what we were comparing, which was the current schedules and New Jersey law and what the government was doing. Read fairly, I believe their opinion is going for another rule, which is a good enough rule or a close enough match rule, and they didn't get it, and now they're trying to have an affirmation on another basis. There was a recent opinion that the court has received some letter briefing on concerning this issue, and that's the Doe v. Sessions case from the Second Circuit. The only point I want to make on that is that there was basically 18 months between the close of briefing in our case and the issuance of this opinion from the BIA. And during that period, the BIA in Doe v. Sessions had the opportunity to look at the schedules, make this argument, make it part of an opinion, and set it up for judicial review in the process that should be followed under administrative procedure as we know it. Here, I think at minimum we're entitled to actually get some rulemaking, some actual rulemaking from the board on this point, because otherwise the board is essentially asking for an affirmation on the basis of our side literally just getting to sort of argue in response in a reply brief. And so that's really the core point I want to leave with today on these points. I'm happy to answer any of the substantive questions, but ultimately we think the waiver point is critical here, and it doesn't mean the outcome will be any different necessarily, but the board is asking you to make determinations as a matter of law as to how the INA should be interpreted in terms of the schedules, in terms of realistic probability, when the board hasn't had an opportunity even to come to those conclusions itself. It's not a waiver point, it's a Chenery argument. It is a Chenery argument, yes. I think better articulated it's a Chenery argument. We'll hear you on rebuttal, Mr. Kruger. Thank you. Mr. George. May it please the court, Matthew George for the Attorney General. As the court has already pointed out on the aggravated felony issue. I'm sorry, would you start where Mr. Krupp left off? Yes, Your Honor, about the control services. Harder for you, easier for me. Sorry to do that to you. Yes, Your Honor, on the controlled substance issue, specifically the. . . Yeah, the Chenery issue and the schedule. Well, a reasonable reading of the board's decision here is that they compared the schedule, in effect, at the time of conviction, the prior to 2015 schedule. I think they quoted it, or at least quoted the New Jersey statute. I can't remember if it was the New Jersey statute or the federal schedule, and went through and said this matches almost exactly. And that's. . . Sure, they should have done a better job, but looking at it as a whole, they compared the schedules, they said this matches up, and that's sufficient. What about the language of their opinion? Mr. Krupp's point is that what the BIA actually says is, after acknowledging their argument that the schedule is different, that there is a connection between the elements of respondent state offense and federal law sufficient to sustain the charge of removability. How is a connection that's sufficient but that, in fact, is not an overlap, not a new standard? I'm not sure, Your Honor, is where they got that language or really why they even needed to say that. The broader point is a fair reading of what they did right before they get into that sort of alternative ground for their decision is that the schedules do match up, and that's what we can take away from it is that the schedules match up. And then on de novo review, as this Court is reviewing this issue de novo, it can look at the schedules as we've briefed it here. But if we can't tell if they were adopting a new sufficient connection kind of test and we have to affirm on the basis of their rationale, don't we need a remand for them to articulate to the BIA to identify what that ground was? No, because that's an alternative basis that they set out there in that decision. Right before it is where they're comparing the schedule or at least quoting the schedule. Are you talking about AR6 where they said the Board observed that both New Jersey law and federal law include coccolize in any salt, compound, derivative, mixture, or preparation which contains any quantity of coccolize in its list of controlled substances? Yes, Your Honor, that's the language I'm referring to. That's sort of the comparison. And if, in fact, they had been referring to the schedule that Mr. Martinez is arguing for, they would have not been able to say that because of the ioflupine change? Precisely, Your Honor. That's the comparison that they did if they were looking at the 2015 schedule that that substance would not have been on there. Then they went on. How do we know which schedule they were looking at? I mean, that if is at the heart of this when it comes to Chenery and our ability to affirm at least on this issue. Because that's the language in the statute, in the schedule at the time of conviction. If they were quoting a different one, it would be different. That assumes they're adopting a time of conviction rule, which they don't explicitly do. Well, they don't explicitly state it in this opinion. They have in other published board decisions. They have such as matter of Ferrara that would be cited in one of our 20HA letters. Right, but they don't cite Ferrara here. They don't rely on that. They don't incorporate it. That's true. And sort of going beyond this point on the aggravated felony issue, even if the controlled substance, there's some infirmity here, there's some confusion about what the board did, because the aggravated felony ground is still valid, it's not going to make a difference on the controlled substance. So if the court ends up affirming the aggravated felony or denying the petition with respect to that. Why don't you address that issue? Yes, Your Honor. Turning to the aggravated felony, as the Court has pointed out, this is really about semantics. It's about labels that we're using to describe in a very generic manner what federal courts and what New Jersey courts are doing. And so when we use the words near solicitation, for example, that's not how New Jersey courts apply solicitation. As I believe Judge Bevis pointed out, New Jersey has merged solicitation or folded it into its definition of attempt. And that's specifically in the state case Juvonovic that we've cited. It lays out the elements of solicitation, which are a solicitation plus all of the elements of an attempt. And so it's actually narrower than the federal definition of attempt because it requires more. And so to say that a naked or just word sort of solicitation that didn't otherwise meet the substantial step that's strongly corroborative of the criminal purpose would be a convictable offense in New Jersey is not accurate. Okay. The best case for your adversary is Sandoval. Do we have to split from the Ninth Circuit in order to rule for the government here? No. I suppose Sandoval as well as the later one I think is Garcia Martinez. Jimenez. I'm sorry. The Ninth Circuit does a very cursory analysis there and concedes that the statutory language is identical. It then devolves into the probable desistance test. And that's a point of distinction with the Ninth Circuit. That really is one aspect of attempt. It's not the substantial step test that this court, federal courts have recognized, the Model Penal Code recognizes is the definition of attempt. Specifically with Martinez, I believe it's corny that this court has distinguished Martinez as not the authority on that issue. It's corny as an unpublished opinion. However, the reasoning and logic still apply that the Ninth, it's kind of doing its own thing and it's distinguishable and certainly in Garcia Jimenez. I can see how you're arguing to reject it, but how are you distinguishing it? Is there a way to distinguish it without rejecting it? Well, yes. Specifically with respect to Garcia Jimenez, it's because the Ninth only addressed or looked to the probable desistance test. And that's not the definition of attempt that this court looks to, that federal courts in general look to. It's the Model Penal Code definition, which is what New Jersey applies. And as the Ninth recognized in Garcia, the language is identical. It then goes on to really stretch Fornino to places it really shouldn't go. Is it also true that in Garcia Jimenez, the parties stipulated that Fornino applied and there's no reference at all to Farrad in that opinion? That's correct, Your Honor. I believe everyone has said Fornino is the only case that matters, which as we've cited, there are many other New Jersey Supreme Court cases. So if Farrad has relevance here, then there was something important missing by the parties and the court in Garcia Jimenez. Yes, Your Honor. I'm not sure why they looked only to Fornino and gave really a very minimal analysis of Fornino. I think as Judge Bevis had also pointed out, Fornino is about jury instructions. It's a plain error case. It's about New Jersey trying to figure out what do we tell juries and trying not to confuse them and what's the right words to use in charging attempt to juries. I've looked at all this language about preparation, mere preparation, remote preparatory acts. I don't know really what any of that means. If you look even at this court's pattern jury instructions, it talks about some plans to or some preparation for committing that crime. That's the charge for attempt. What are some plans versus mere preparation versus remote preparatory acts? And so Fornino dealt with what do we tell juries when we're instructing on this to try not to confuse them. So they said, well, we probably shouldn't explicitly exclude mere preparation, whatever that means. However, they still instruct on there must be a substantial step and that must be strongly corroborative of the criminal purpose. And looking at every New Jersey case since then, they may give some sort of a recitation of this notion of mere preparation is not included. They then apply the substantial step test and look at the facts of each of those cases and find that or hold that the facts were sufficient to meet the substantial step and it was strongly corroborative of the criminal purpose. And so it's really about just what do we tell jurors to try not to confuse them when we use these words such as mere preparation. A juror, I think, is reasonable to imagine could conceive of everything but that last step or maybe even the actual going beyond attempt into the actual commission of the crime might be mere preparation. And so for instructing jurors, you must exclude mere preparation from this definition of attempt because it doesn't really have any meaning anymore, even though we're still talking about substantial steps and it's strongly corroborative of the underlying criminal purpose. And that sort of branches into the Duenas-Alvarez or reasonable possibility test. I haven't found, and Petitioner certainly hasn't cited any cases in New Jersey where a New Jersey court has said the facts of this case are mere preparation and that is sufficient to convict the defendant in this case of an attempt in New Jersey and that applies to solicitation as well. In all of the cases, they find that the facts were sufficient to satisfy the substantial evidence, the substantial step test that is also strongly corroborative of the criminal purpose. And that's exactly what this court, federal courts apply, the model penal code applies. The model penal code, as Judge Krause pointed out, goes even further and defines solicitation and even what might be considered a mere or naked solicitation as evidence of attempt. Or excuse me, of attempt. New Jersey didn't adopt that. It actually requires more than mere words. And so it didn't adopt those seven. This court has not adopted those seven examples from the model penal code. It is in there for whatever that's worth in the generic model penal code language. However, New Jersey courts haven't adopted it. This court hasn't adopted it. It's still the substantial step test. It's still strongly corroborative of the criminal purpose, whether we're talking about attempt or solicitation. Solicitation actually requires more. So the exclusion of that list, exclusion of solicitation as an illustrative example, is not to be taken as removing it from the category of attempt, right? That's correct, Your Honor. As New Jersey courts have set out, and Javonovic explicitly sets out the elements of New Jersey attempt. And it's the solicitation plus all the regular statutory elements of attempt. So it's actually narrower than the model penal code definition because it requires that extra fact that must be found. Jumping back, I'll just quickly say in terms of the controlled substance, assuming we're going to read the board's decision to include that, that looking at the statute at the time or the schedules at the time, they overlap entirely. It's not overbroad. It's categorically a controlled substance offense. Likewise, this is categorically an aggravated felony. Therefore, the court should deny the petition.  Mr. Krupp? Briefly, Your Honor. So, once again, George Krupp for the petitioner, Your Honor. Let me make one point that I think got a little lost. The finding that New Jersey attempt law and federal attempt law are congruent to the extent that that's what the court does does not actually answer the entire aggravated felony question because the hypothetical federal felony of which Mr. Martinez has presumably been convicted actually requires the presence of a controlled substance under federal law. And so you actually need to answer the controlled substance question in order to determine categorically that he's been convicted of an aggravated felony. And I'll just repeat briefly what I said in my opening remarks. That is going to require a remand as far as we're concerned. Now, I'm glad that Mr. George mentioned Ferreira. That was a case that the board decided in 2014, was never cited by the BIA here, and then we saw in a 28J letter 10 days or so after briefing had actually closed in this case. And what Ferreira tells us is two things. One, it doesn't actually tell us which federal schedules to use. It tells us which state schedules to use. Because at the time, in that case, Connecticut law had not yet removed a substance as of 2010 from its schedules that the federal government had removed in 1986. So all that Ferreira is telling you is you use the present federal schedules and you compare them to the state schedules that were in effect at the time of the defendant's conviction. And we don't disagree with that. Of course you're going to have to look at the state schedules to determine what the defendant was convicted of. So that's a close reading of Ferreira in that regard. The other thing about Ferreira is there the board says, okay, we may have a realistic probability issue here under Duenas-Alvarez. Let's remand to the IJ because that's going to require some fact-finding. We can't affirm on a realistic probability basis right now. So I don't want for me to leave this court with the panel thinking that we agree that the only way to undertake a realistic probability analysis, for example, is for my colleagues or for Mr. George's colleagues or even for this court's clerks to run some searches on Westlaw. There might be other ways to do that. And I think it's important to acknowledge that BIA has made that clear in the past, that a realistic probability analysis may be fact-based and isn't necessarily appropriate even for the board to undertake. Getting very briefly to- What does it even mean to have a date of removal proceeding? I mean, we have here a series of different events, a determination of removability, a motion for reconsideration, a petition to the BIA. What is the rule that you would discouse as to the appropriate date? So we think the argument we'll make on remand to the BIA when they're doing their rulemaking is that a time of the board's decision is the appropriate time. That that best captures the purpose of immigration proceedings, which is to determine on a present basis whether an immigrant should remain in the country based on their past actions. But there's no case law to support that. So I'd actually like to point the court to, and I'm out of time, but if I could continue briefly here. There's a case that this court decided a few years ago called Chavez-Alvarez. And we cite that case when we discuss the removal of sodomy, consensual sodomy laws, from the books in a lot of states. And what happened in Chavez-Alvarez I think is important to acknowledge, which is that the defendant in that case was convicted of consensual sodomy in 2000. In 2005, we know that Lawrence v. Texas said consensual sodomy laws are unconstitutional. In 2010, or it may have been a couple years later, this court said, oh, well, that can't be a crime of moral turpitude then. The court looked at the present definition of crime of moral turpitude, the one that incorporated the Supreme Court's intervening change in law. It didn't look back at the year 2000 definition of crime of moral turpitude to determine that it was a removable offense. So I'd just like to point out that the issue is not as cut and dry as even the Doe v. Sessions court makes it out to be. And it would be inappropriate to decide this case at this point on the briefing, on the record that the court has in front of it. I'll leave it there, Your Honor, unless you have further questions. Thank you, Mr. Krupp. Thank you, Mr. George, both for an excellent argument. We'll take the matter under advisement.